I would like to address how the district court erred and what the court should have done differently. Simply put, the district court applied the Texas Tort Claims Act standard when it should not have. As the court is well aware, the Texas Tort Claims Act applies only to governmental units. And in her opinion, the district court cited a number of Tort Claims Act cases and then simply applied the Tort Claim Act's actual knowledge standard to the facts of our case. But even if we throw that out the window, we still have to, on the common law level, look at whether Mr. Cobb and his colleague were invitees or licensees, right? That is correct. And if they were licensees, then the application of the laws that the judge used would have been accurate, right? Here is our position on that, Your Honor. Thank you. The Texas has, of course, recognized the concept of a public invitee for years. That concept is embodied in Section 332 of the Restatement of Torts. This Court in the Lushuga case, Lushuga v. Southern Pacific . . . I don't think that a public invitee is a person invited to enter and remain as a member of the public for a purpose for which the land was held open to the public. Had the Court applied a traditional licensee invitee analysis, we contend it should have concluded that . . . Oh, I understand that you're contending that. My question is, if in fact, let's just do a hypo, if in fact the plaintiffs were actually licensees, Mr. Cobb and his colleague were licensees, then the application of the law that the judge used would have been correct. With one exception, Your Honor, in the Lushuga case, as I read that opinion, this Court established an exception to the general rule of a duty to a licensee, and that exception is where the possessor of the land, in this case, that would be James Construction, has knowledge of a dangerous condition and the licensee does not, the possessor does have a duty to warn the licensee. But that's true in general licensees. Actual knowledge is exactly what a licensee . . . I mean, let's just forget anything about the government, just, you know, you're walking up my sidewalk, coming to my house, that kind of licensee situation. If you have actual knowledge, you're supposed to warn people. I think I agree with the Court that if a licensee standard applies, the Court did not err. Okay. So that's my question. So the whole case boils down to showing that they're invitees, and I guess the question I have is, you know, I understand the argument about the public, this and that, but you're not suing, you know, the state or the county or the city, you're suing the construction company. So how are they, the other side, the premises liability people, in the invitee process here? Well, we contend that as a member of the traveling public who has to go from point A to point B, in this case, Mr. Cobb, had to drive through this construction site, he was a member of the public, on that property for a public purpose, that makes him a . . . I mean, in an invitee, in the common law, which we're now properly reverting to, you have to also show that there's a mutual benefit, and there's clearly a mutual benefit to your client to use the public highway, but what is the benefit, mutual benefit, that the construction company specifically received from your client on that day when he traveled that auxiliary highway? What is it? I believe your Honor has answered the question the way I would, no benefit specifically from Mr. Cobb as opposed to the payment they received as a contractor. So we're not contending this is like a public use type case where, you know, a citizen could pay to pass through that area. So, outside of an indirect benefit that Mr. Cobb as a taxpayer supported this project, there would be no mutual benefit, Your Honor. Whenever you acknowledge there's no benefit to the defendant in this case, don't you give your case away because I think we had reduced it to your obligation to prove that he was an invitee. I sense some tension in the cases, and I think it may have been the LeShuga case that I certainly read to imply that if the entity had general knowledge, then . . . I don't really go to the benefit question. I think I've answered no direct benefit other than what they received as a contractor. And so you concede then that in terms of common law, you cannot satisfy the requirement of an invitee? Unless the definition of business . . . I'm sorry, public invitee takes that out of the equation. I understand. But then you seem to me you're edging toward the argument that you ultimately discredited on the part of the judge in this case applying the Texas tort law to the case. I mean, you're getting back into the argument that the public considerations are an issue here. Yeah, and I think if we lose invitee status, then this court will be hard pressed to find error in the district court. Okay. Well, thank you. Thank you for your honesty. Okay. There were two other . . . I'm sorry, two cases that the appellant cited in their brief that for the proposition that this Tort Claim Act actual knowledge should apply, I would point out that those two cases are Price Construction v. Castillo and Hoyt v. Lane Construction. In Price, neither party raised the licensee invitee distinction on appeal and that court of appeals noted that and likewise in the Hoyt case, I had to go back to the district court's order, but it acknowledged in that order granting summary judgment that the plaintiff conceded licensee status in that case as well. So, my final point is that we have properly raised that in this case and would simply ask the court to apply the traditional licensee invitee status and reverse the court's order in that respect. I mean, you're asking us to do what now to . . . state again so I can clearly understand the basis that you say you can win if we decide what . . . Well, we're asking the court to reverse the order granting summary judgment specifically because on these facts there were genuine issues of material fact as to Mr. Cobb's invitee status which would include summary judgment. We would not have to prove actual knowledge of the condition on the part of James Construction. But you just conceded, I thought, that under common law he was not an invitee. We contend he was a public invitee as defined in Texas law. A public invitee. Yes, sir. Any other questions? All right. Thank you. All right. Mr. Snyder. What is your response to the theory of a public invitee in this situation? My response is this, Your Honor. I think the Texas Supreme Court decided that issue in 1993 in the Texas State Department of Highways and Public Transportation v. Kitchen case. That was a case that was brought by Kitchen under the Tort Claims Act against the state. On appeal, Kitchen raised the issue about whether his payment of licensing fees and vehicle registration fees elevated his status from that of a licensee to invitee. And the Supreme Court held that it did not. So I think the Kitchen case establishes that both Mr. Cobb and his passenger at the time of the accident, Mr. Salinas, were licensees. They were not invitees. Have there been any Texas cases since 1903 that have addressed the question of a public invitee as in the shoes of a public invitee in the same shoes as a common law invitee? Not to my knowledge, Your Honor. But if I may, let me address another issue that you raised, and that concerns Mr. Cobb and Mr. Salinas' alleged status as invitees and the requirement that there be a mutual economic benefit to both them and my client, James Construction Group. My response to that is the economic benefit to my client was established when it signed the contract to perform this highway construction project on behalf of the state. Years and months later when Mr. Cobb and Mr. Salinas decided to use this part of the roadway for a business purpose that they had completed earlier in Oklahoma resulted in no further economic benefit to my client, James Construction Group. But there was nothing about having cars on the road that would be helpful to the construction company. In fact, construction companies like to shut down roads to do their construction for exactly this reason. We don't want to have people getting in accidents and so forth as they come through the construction. You are absolutely correct, Your Honor. And if I may address another point that my colleague, Mr. Carter, raised, and that is about this argument that Judge Craven applied the Texas Tort Claims Act to my client, James Construction Group. I think with all due respect they may have been confused or misunderstood that portion of her order where she discussed the Texas Tort Claims Act. She discussed it and discussed its relevance in determining what duty the state would have owed to Mr. Cobb and Mr. Salinas had the state been sued by them for this premise defect claim. Because if you go back to Texas jurisprudence and the line of cases that began with Redinger and on up through United States Scaffolding versus Levine, the Texas Supreme Court has consistently held for decades that a general contractor owes no duty that is greater than that which is owed by the owner or occupier of the premises, which in this case was the state of Texas. So what Judge Craven was in fact doing was simply looking to the Tort Claims Act to determine what duty would have been owed by the state and thereby saying that is the duty that would have been owed to Mr. Cobb and Mr. Salinas by my client, James Construction Group. But . . . Which turned out to be just the simple duty of a licensee. Correct. Correct. That is correct. The answer is she got the correct answer, the correct result. I certainly believe she did and I think it was Judge Haynes that also brought up the issue that aside from the Tort Claims Act and using it to determine what duty may have been owed by my client in this case, put that aside for a moment. The law, particularly the Kitchen case, which I cited to the court, clearly establishes in my opinion that Mr. Cobb and Mr. Salinas were licensees. So if in fact they were licensees, we don't even need necessarily to look to the Texas Tort Claims Act to determine the duty that applied to my client. We can use Texas common law jurisprudence concerning Priebus' defect claims to determine that and the law, quite frankly, is the same. So without going back and regurgitating Judge Craven's analysis, I think she did a very detailed and correct legal analysis of the claims that were at issue here. I think she went through a very detailed analysis and discussion of the law that applied to those claims and correctly applied the law to them and for the reasons that we have mentioned not only in our brief but we've discussed in my argument today as well as Judge Craven's order, we believe that the summary judgment in favor of my client should be affirmed. Has Texas actually adopted the public invitee concept fulsomely? That I do not know, Judge Haynes. I honestly do not know. I thought you told me the public invitee had been dismissed by the Supreme Court of Texas in 1903. Well, I certainly believe that to be the case and not having knowledge of any cases decided by the Texas Supreme Court since then, I still believe that to be the law. That is, a motorist who has a driver's license, who has paid vehicle registration fees, those facts do not elevate that driver or that motorist to the status of a public or a business invitee. They are still licensees. Okay. A citizen using a public service is not an invitee is what you're telling me. Yes, Your Honor. I believe that to be the case. Okay. Thank you very much. All right. If there's no further questions, I'll give my time back to the Court. Thank you. Okay. Thank you. Thank you. Thank you. All right. We appreciate both sides' arguments and the case is now closed.